UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

GRETA D. KILGO, )
)
    Plaintiff, )
) Case No. 2:04-CV-381
v. )
) Chief Judge Curtis L. Collier
CINGULAR WIRELESS, L.L.C., )
)
    Defendant. )
)

# MEMORANDUM

## I. BACKGROUND

Before the Court is Cingular Wireless, L.L.C.'s ("Defendant") motion for summary judgment filed on December 15, 2006 (Court File No. 29). Greta D. Kilgo ("Plaintiff") filed a response on January 24, 2007 (Court File No. 34). As Plaintiff has responded to Defendant's motion and all necessary responses have been filed this matter is now ripe for decision.

## II. FACTS

Defendant, until recently, employed Plaintiff at Defendant's Johnson City Call Center ("Call Center") located in Johnson City, Tennessee (Court File No. 35 at ¶ 1). The Call Center is a large facility where the operators make or field calls from customers who owe Defendant money. (*Id.* at ¶¶ 1, 2.) Defendant places great emphasis on minimizing its customers' wait time by ensuring that customer calls are fielded quickly and handled correctly and efficiently. *(Id.* at ¶ 4.) Plaintiff started working at the Call Center on September 17, 2001 (*see* Court File No. 29 at 2). Plaintiff had reconstructive surgery replacing her hip in June 2004 and her knee in July 2005 (Court File No. 29, Ex. 2-A at 122). The events at issue occurred primarily between November 2001 and July 2005. Plaintiff apparently no longer works for Defendant. Defendant's motion refers to Defendant as "her former employer" (Court File No. 1 at 1). The conditions of the termination of her employment are not in the record before the Court and so play no part in this decision.

A.   **Disability Accommodation Requests**

Plaintiff alleges Defendant failed to offer reasonable accommodations as required under the Americans with Disabilities Act ("ADA"), 42 U.S.C §§ 12101-12213 (Court File No. 1 at ¶ 3). Plaintiff has severe oseteoarthritis in her hip and knee area (Court File No. 29, Ex. 2-A at 120).[1] Plaintiff had difficulty sitting or standing for long periods of time (Court File No. 29, Ex. 2-C at 7). Because of this impairment, Plaintiff made a series of four accommodation requests related to the location of her desk, its proximity to an entrance and bathroom, and her ability to take breaks more frequently.

First, on November 7, 2001 Plaintiff orally requested an accommodation in a meeting with Chris Page and Carla Gass; Carla Gass was Plaintiff's supervisor, the record does not state what Chris Page's job was (Court File No. 29, Ex. 2-A at 146). Mr. Page told Plaintiff Ms. Gass would assist her with getting an accommodation. *Id*. Eventually, Plaintiff was directed to Mr. Hawkins who told her, unless she had papers from a doctor, Defendant would not grant an accommodation (again, the record does not state what Mr. Hawkins's job was). (*Id*. at 146-47.)

Second, Plaintiff therefore presented papers that her gynecologist, Dr. Renee Hollins, filled out in March 2002. *See id*. at 147, 154; (Court File No. 29, Ex. 2-C at 2-3). Cingular supplied what was, apparently, their standard form for a request for disability. Dr. Hollins indicated Plaintiff was significantly limited in her ability to perform a major life activity as compared to an average person in the general population (Court File No. 29, Ex. 2-C at 2). However, Dr. Hollins also indicated that this disability did not a "substantially" limit Plaintiff in a major life activity. *(Id*.) Because of this discrepancy Defendant denied Plaintiff's request for an accommodation (Court File No. 29, Ex. 2-A at 154).

Third, Dr. Hollins sent a letter to Defendant dated April 22, 2002, to clarify her opinion (Court File No. 29, Ex. 2-A at 155-56). Dr. Hollins stated that Plaintiff was "significantly limited"

---

[1] Because no other page numbers are available, the Court refers to the page numbers of the deposition transcript. These, of course, are not the true page numbers within the document, but are the easiest means of reference.

in the performance of a major life activity, but Dr. Hollins did not consider this substantial because it had "nothing to do with [Plaintiff's] job description." (Court File No. 29, Ex. 2-A at 156). Dr. Hollins stated she did not understand what Defendant considered a substantial limitation. (*Id.*)

Fourth, Plaintiff obtained the opinion of Dr. Catherine Tanner (Court File No. 29, Ex. 2-C at 6-8). Dr. Tanner, Plaintiff's primary physician, filled out Defendant's form unambiguously indicating Plaintiff had a substantially limiting disability (Court File No. 29, Ex. 2-A at 158-59). It is not wholly clear when Dr. Tanner rendered this opinion, but the record shows Defendant dispatched this form to Dr. Tanner on December 9, 2002 (Court File No. 29, Ex. 2-C at 6). Dr. Tanner submitted a supplemental form in November 2003 when Plaintiff wanted to take more frequent breaks at work (Court File No. 29, Ex. 2-D at 3-5).

After the submission of the fourth request, Defendant accommodated Plaintiff through the placement of Plaintiff's workstation next to an exit and a bathroom (Court File No. 29, Ex. 2-A at 24, 27). Defendant also accommodated Plaintiff through splitting her break time and permitting her to take more frequent breaks (Court File No. 35 at ¶ 38).

Following Plaintiff's reconstructive surgery, she claims to still experience stiffness and is not completely able to do her job, although her ability to sit has been extended (Court File No. 35 at 12).

### B. Harassment of Plaintiff and Alleged Retaliation

Plaintiff alleges Defendant engaged in or permitted prohibited acts of discrimination based on race, disability, and retaliation for the filing of "EEO complaints," as well as a hostile work environment (Court File No. 1 at ¶¶ 3, 5-6).

Plaintiff, in her deposition and responses to interrogatories, lists many different ways her co-workers harassed her. There are too many incidents alleged to summarize all here, but the following is a fair sample: co-workers rejoicing when Defendant moved Plaintiff's desk (Court File 29, Ex. 2-B at 9); co-workers following her to and from lunch, the parking lot, and the restroom (*id*. at 9, 12-13). Plaintiff receiving a far higher number of calls than her co-workers, preventing her from going into a "not ready" status (*id*. at 12); the IT staff erasing content and changing the settings of her

3

computer; *(id.* at 10, 11); Defendant providing differential disciplinary treatment for white co-workers who went into "not-ready" status four to six minutes before quitting time (*id.* at 11); supervisors erroneously claiming her time sheets were not correct; (*id.* at 10, 12); security unnecessarily asking for her identification; (*id.* at 10); co-worker whistling while walking past her desk (Court File No. 29, Ex. 2-A at 407); white male co-workers acting strangely when Plaintiff wore red clothing, (*id.* at 413); Defendant treating an insubordinate white co-worker differently; (*id.* at 390); co-worker touching Plaintiff without her prior approval; (*id.* at 334-36); co-workers walking past Plaintiff's desk as an act of intimidation; (*id.* at 337). These examples are a partial list of the incidents spanning from 2001 to 2005.

## III. STANDARD OF REVIEW

Plaintiff moves for summary judgment under Fed. R. Civ. P. 56(b). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes that a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

4

242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## IV. ANALYSIS

### A. Defendant's Motion for Summary Judgment

Defendant moved for summary judgment on December 15, 2006 (Court File No. 29). Defendant argues judgment should be granted because Plaintiff has "wholly insufficient evidence to sustain her claims" (Court File No. 30 at 1) (citations omitted). Defendant attempts to demonstrate Plaintiff "fails to make a sufficient showing on an essential element for which [Plaintiff] bears the burden of proof." *Celotex*, 477 U.S. at 323. The question is whether there is enough evidence in the record to create a genuine issue of material fact. Fed. R. Civ. Pro. 56. In order to make a sufficient showing, Plaintiff must point to evidence sufficient for a reasonable juror to find for Plaintiff. *Beck-Wilson v. Principi*, 441 F.3d 353, 364 (6th Cir. 2006).

### B. Plaintiff's Response in Opposition

Plaintiff, in response, argues "[D]efendant filed no affidavits or depositions in support of their position other than the deposition of the plaintiff" (Court File No. 34 at 1). Plaintiff further argues the burden rests on Defendant and the "Court has no facts before it contradicting the plaintiff's position of what was happening at her job" (Court File No. 34 at 1). Plaintiff's position is inconsistent with summary judgment jurisprudence. Defendant has no burden other than to point to what it considers deficiencies in Plaintiff's proof. When faced with summary judgment motions plaintiffs must produce sufficient evidence to permit the case to go forward. The question then is whether there is sufficient evidence before the Court for a reasonable juror to satisfy each element of Plaintiff's claims. In determining this, Plaintiff may not rest on bare statements of fact or mere allegations, but must set forth specific facts showing that there is a genuine issue for trial. Fed R. Civ P. 56(e).

### C. ADA Accommodation Claim

The ADA states that an employer may not "discriminate against a qualified individual with

a disability." 42 U.S.C. § 12112(a). A "qualified" individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of [the] employment position." 42 U.S.C. § 12111(8). "Discrimination" includes an employer's "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified . . . employee unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A); *see also U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 396 (2002).

Plaintiff presented Defendant with a written opinion of a medical doctor. This opinion stated Plaintiff had a condition which substantially limited her in a major life activity (Court File No. 29, Ex. 2-D at 4). There is no dispute that Plaintiff is a qualified individual with a disability. There are only two remaining issues: First, is the accommodation of Defendant reasonable where Plaintiff would prefer a different accommodation, and second, can Defendant force Plaintiff to get a medical opinion before offering an accommodation.

First, under the ADA, Defendant is obligated to offer reasonable accommodation to qualified individuals with disabilities. Plaintiff concedes Defendant moved her desk closer to the exit and bathroom, as she requested (Court File No. 29, Ex. 2-A at 25). However, Plaintiff does not use the restroom closest to her desk because it is left handed and she prefers a right handed restroom. (*Id*. at 27). Plaintiff is physically capable of using the closer restroom, but prefers to use the restroom further away. (*Id*. at 29).

Defendant is not obliged to provide the accommodation Plaintiff prefers, but must merely proffer a reasonable accommodation. The United States Court of Appeals for the Sixth Circuit has held "an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800-01 (6th Cir. 1996) (*citing Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986)); *Keever v. City of Middletown*, 145 F.3d 809, at 813 (6th Cir. 1998). Where a plaintiff refuses a reasonable accommodation the plaintiff loses the protection of the ADA. 29 C.F.R. § 1630.9. Here, Plaintiff

concedes the accommodation is one she is physically capable of using. Notwithstanding her preference, there is no reason to believe this accommodation is not reasonable under the law. Therefore, Plaintiff presents no genuine issue of material fact on this issue.

Plaintiff also complains Defendant's accommodation grants her insufficient break time. Plaintiff, however, has advanced no evidence or theory explaining why Defendant is not correct in permitting Plaintiff one break every 56 minutes (Court File No. 30 at 10). Plaintiff asks for a break every one-and one-half hours (Court File No. 35 ¶ 34). Absent an explanation or evidence from Plaintiff, no reasonable juror could find this accommodation unreasonable.

Plaintiff next claims that Defendant's denials of her first three requests for accommodation were wrongful (Court File No. 1 at ¶ 7). Plaintiff's first request was oral and Defendant eventually told her she had to provide documentation from a doctor (Court File No. 29 at 146). Defendant, as the employer, may request a medical examination before granting an accommodation. 29 C.F.R. § 1630.14 (c) ("covered entity may require a medical examination").

In response, Plaintiff provided the opinion of Dr. Hollins. Dr. Hollins filled out a form, effectively indicating Plaintiff both was and was not substantially limited in a major life activity at the same time (Court File No. 29, Ex. 2-C at 2). Again, the form asks if a condition "substantially limits" Plaintiff in a major life activity. "Disability" under the ADA is a person who has "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." 29 C.F.R. § 1630.2(g). Major life activities listed in the implementing regulations include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The list on the form of major life activities is identical to the regulation, with the addition of a box to indicate "Other." (Court File No. 29, Ex. 2-C at 2). Legally, Defendant's form simply asks whether a claimant is disabled as defined in the ADA and its regulations. Defendant made available a listing of major life activities and asked whether the Plaintiff was limited in the performance in each or any of those activities. (*Id*.) Dr. Hollins responded to the form's one question as if it were two questions, checking the box that

7

Plaintiff's ability to walk was substantially limited, but circling the word "substantial" in the introductory sentence and writing "NO" next to it. (*Id*.) The ability to request a medical opinion certainly allows Defendant to rely on the opinion Plaintiff procured. Plaintiff has advanced neither argument nor evidence to sustain a claim that Dr. Hollins' opinion, as evinced in this form, was sufficient to support a finding that Plaintiff was disabled, and thus summary judgment for Defendant is appropriate as to this first request.

Dr. Hollins then wrote a letter for which the Court has a nearly illegible copy (Court File No. 29, Ex. 2-C at 5).[2] Dr. Hollins makes it clear she believed Plaintiff's limitation was not substantial because Plaintiff's disability had "nothing to do with her job description. . . ." (*Id*. at 156.) Dr. Hollins also noted Plaintiff took twice as long to reach her destination as compared to an average person of the general population (*Id*.) Dr. Hollins closed by noting she was "not sure what your company considers substantial." (*Id*.) Whether or not Plaintiff was or is substantially limited in a major life activity is a conclusion of law and Dr. Hollins' opinion cannot reasonably be relied on for this conclusion, especially where she indicated she did not fully understand what Defendant was asking. "Substantially limited" is a defined term under the ADA and, as noted below, whether or not a job description requires the employee to perform such activity has nothing to do with whether an individual is disabled under the ADA. Whether the employee needs to perform that activity, however, will determine whether an accommodation is required or is reasonable. Dr. Hollins may be relied upon to provide a medical opinion of Plaintiff's abilities or inabilities, but may not be used to establish the existence of a legal condition with which Dr. Hollins has no expertise or familiarity.

Therefore, the question as to the reasonableness of Plaintiff's second accommodation request is whether a rational juror, on the facts submitted by Dr. Hollins in the letter and the form, could conclude Plaintiff was a "qualified person" within the meaning of the ADA. Here, Dr. Hollins stated Plaintiff was significantly limited in her ability to walk as compared to a member of the general

---

[2] Fortunately, Defendant read the letter during Plaintiff's deposition and the transcript includes the text of the letter (Court File No. 29, Ex. 2-A at 155-56).

public. (*Id*. at 155-56.) According to ADA implementing regulations, the term "substantially limits" means "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). Although Dr. Hollins may have believed Plaintiff was not substantially limited in her ability to *work*, the facts underlying her conclusion establish that a reasonable juror could find Plaintiff was substantially limited in her ability to *walk*, which means she was disabled under the ADA. Therefore, a reasonable juror could conclude Defendant had a duty to provide a reasonable accommodation under the ADA.

In addition to arguing Plaintiff cannot show sufficient evidence to demonstrate a genuine issue of material fact, Defendant argues that Plaintiff's claim is time barred. Defendant points to the first EEOC charge information form, which Defendant avers was filed on January 11, 2003 (Court File No. 30 at 11 n.7).[3] It appears there are irregularities in the EEOC documents: the first page is stamped as received on January 12, 2004, but the "four" is written over in ink on a "three" which appears to be stamped. Plaintiff appears to have signed the charge on August 11, 2003. A continuation page is stamped received on August 28, 2003 (Court File No.29, Ex. 2-D at 6, 12, 14). Defendant only contests the filing of the EEOC complaint, Defendant does not argue Plaintiff's filed the complaint too late after receiving the right to sue letter.

Merely pointing to this problematic document is not enough for Defendant to prevail on this defense. The irregularities are ambiguous, and unlike the other claims Defendant has raised, the statute of limitations is an affirmative defense for which Defendant bears the burden of proof. As the documents on their face do not show which date is the correct filing date Defendant cannot merely proffer them, but must provide some argument or explanation to show there is no genuine issue of material fact. Since Defendant has not carried their burden, Defendant's motion for

---

[3] Defendant pleaded a defense of statute of limitations in their answer as required by Fed. R. Civ. P. 8(c) (Court File No. 4 at 1).

9

summary judgment on this defense will be **DENIED**.

The Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment on Plaintiff's ADA/failure to accommodate claims, as explained above. All claims will be **DISMISSED**, except Plaintiff's allegation that Defendant wrongly denied her request for accommodation after receipt of the letter from Dr. Hollins.

### D. Discrimination Claims

The elements of a prima facie discrimination cause of action are similar whether the cause is asserted under Title VII or the ADA. Both may be proven through direct or indirect methods. Plaintiff concedes she has never heard any racial epithets or other inappropriate comments or slurs disparaging African-Americans (Court File No. 35 at ¶ 23). There is in the record no direct evidence of discriminatory intent. However, Plaintiff may prove her case through indirect or circumstantial evidence. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004); *Gibson v. City of Louisville*, 336 F.3d 511, 513-14 (6th Cir. 2003); *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999). "[M]ere personal belief, conjecture and speculation are insufficient to support an inference of . . . discrimination." *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997).

In order to decide a discrimination claim where there is no direct evidence of discrimination the Court applies a three-step burden-shifting analysis. First, the plaintiff must set forth a prima facie case of discrimination. Second, the burden of production shifts to the employer, to articulate some legitimate, nondiscriminatory reason for its actions. Third, if the employer carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reason offered by its employer was a pretext for discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Defendant in its motion alleges Plaintiff cannot present enough evidence to present a genuine issue of material fact (*see* Court File No. 30 at 1). Given the posture of this motion the only question for the Court at this time is whether the Plaintiff can produce enough evidence for her prima facie case.

To establish a prima facie case of employment discrimination due to race or gender, a

plaintiff must demonstrate, first, she is a member of a protected class; second, she was subjected to an adverse employment action; third, she was qualified for the position; and fourth, she was treated differently than similarly situated employees who are not members of the class. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 461 (6th Cir. 2001); *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

To establish a prima facie case of employment discrimination due to a disability, a plaintiff must show, first, she is a "disabled person" within the meaning of the ADA; second, she is otherwise qualified to perform the essential functions of the position with or without reasonable accommodation; third, she suffered an adverse employment decision due to her disability; and fourth, the employer knew or had reason to know of her disability. *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999).

Discrimination claims under either the ADA or Title VII require a showing of an adverse employment action. An adverse employment decision is one that changes the terms and conditions of an employee's employment:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999). Plaintiff has demonstrated no such adverse action by Defendant. While Defendant refers to itself as Plaintiff's former employer (Court File No. 30 at 1), there is no allegation in the complaint or in Plaintiff's response to Defendant's motion for summary judgment of either constructive discharge or any action undertaken by Defendant to change the terms and conditions of Plaintiff's employment (*see* Court File Nos. 1 at 34). Under such circumstances, when Defendant points to Plaintiff's lack of evidence (Court File 30 at 14) and Plaintiff has failed to bring forth any evidence for which a reasonable juror could find for Plaintiff, summary judgment for Defendant is appropriate.

The prima facie claim of discrimination under Title VII requires the Plaintiff to demonstrate that individuals who are not members of the protected class were treated differently than she, as a member of a protected class, was treated. In order for a person to be deemed similarly-situated, "the individuals . . . must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 599 (6th Cir. 2001). A plaintiff need not demonstrate an exact correlation but must show that the comparables are similar in "all of the relevant aspects." *Barnes v. City of Cincinnati*, 401 F.3d 729, 737 (6th Cir. 2005) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)).

Plaintiff has alleged that her white co-workers with disabilities found it easier to get accommodations from Defendant (Court File No. 1 at ¶ 5). However, when pressed, Plaintiff could provide no information except Defendant accommodated other employees and Plaintiff subjectively believed Defendant accommodated the other employees more readily because they were white (Court File No. 29, Ex. 2-A 197-207). Plaintiff named several individuals who worked under different managers. (*Id*. at 199, 202, 204, 206.) The Court takes into consideration Defendant decided accommodations through centralized consideration by a standard form in human resources. (*Id*. at 146.) Even accepting this, Plaintiff neither knew what the disability was nor what information the first co-worker had to submit for the accommodation. (*Id*. at 199-200.) Plaintiff mentioned a co-worker in a wheelchair, but again she could state neither what his disability was nor how or why the accommodation was granted. (*Id*. at 201-02.) Plaintiff mentioned a co-worker accommodated for an eye stigmatism. (*Id*. at 202.) But again, this worker was on a different team, had a different disability, and Plaintiff has presented nothing explaining what this co-worker had to do to obtain accommodation. (*Id*.) Plaintiff did advance one individual who had a comparable disability, i.e. bad knees requiring the same accommodation as Plaintiff, (*id*. at 204), but again, Plaintiff has no actual knowledge of what this worker had to do to get the accommodation, and merely alleges without

support "[s]he got [an accommodation] . . . because she was white. I got it only after I fought for a reasonable accommodation," (*id*.) Plaintiff mentions one more similarly situated individual, but Plaintiff knows nothing more than this co-worker went on disability and "didn't look sick." (*Id*. at 206.)

In sum, Plaintiff has not shown that any of the other individuals who have allegedly been accommodated are similarly situated, in order to satisfy the fourth element of a prima facie claim of racial discrimination. Plaintiff cannot explain how her co-workers were granted their accommodations and therefore cannot show Defendant required lesser proof from these workers than Defendant required from Plaintiff. Plaintiff is not entitled to a trial based solely on her allegations, but must submit significant probative evidence to support her claims. *Celotex*, 477 U.S. at 324. Under these circumstances, summary judgment on this element of Plaintiff's case is appropriate.

Any claim of discrimination on the basis of disability will be **DISMISSED** because Plaintiff has presented no evidence of an adverse employment action undertaken by Defendant. Any claims of discrimination on the basis of race or gender will be **DISMISSED** because Plaintiff has presented no evidence of an adverse employment action and has presented no evidence of similarly situated individuals being treated differently than she.

      **E.      Hostile Work Environment**

Plaintiff also alleges the conduct of her co-workers and supervisors created a hostile work environment (Court File No. 1 at ¶ 6). To prove a hostile environment, Plaintiff must show, first, she is a member of a protected class; second, she was subjected to unwelcome harassment; third, the harassment was based on her class membership; fourth, the harassment unreasonably interfered with her work performance; and fifth, the employer is liable. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). This harassment must be serious enough that Plaintiff believed it was abusive and a reasonable person would also consider it abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993); *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 566 (6th Cir. 1999). Whether an environment is hostile or abusive can be determined only by looking at all the circumstances. *Williams*, 187 F.3d

at 562. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998).

Whether the conduct of Plaintiff's co-workers was sufficiently adverse within the meaning of Title VII is not a question the Court need reach. Plaintiff's claim fails because she has presented no evidence any harassment was based on her race, sex, or disability.

Title VII is not intended to be a general civility code. *Id.* at 80. "She cannot make her claim based on personality conflicts, bad manners, or petty slights and snubs." *Higgins v. Gonzales*, 781 F.3d 578, 591 (8th Cir. 2007). The Plaintiff must demonstrate that the harassment against her is based on her gender, her race or her disability. *Oncale*, 523 U.S. at 80. Showing the harassment came from a person of a different sex or race is not enough. *Id*. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id*.

Plaintiff has presented no evidence of the cause of the harassment against her except proximity in time. Plaintiff alleges the harassment began after her request for an accommodation (Court File No. 29, Ex. A at 100). It is not clear how the cited deposition text supports Plaintiff's allegation, but if Plaintiff's sole claim is she was discriminated against because she filed a request for accommodation, her claim is more properly couched as a retaliation rather than a hostile environment claim. In any event, Plaintiff's retaliation claim will also require proof the conduct was based on her race, disability, or gender.

F.  **Retaliation Claims**

Retaliation claims brought under Title VII are analyzed by the same legal standard as retaliation claims brought under the ADA. *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997). For a retaliation claim, Plaintiff must show, first, she engaged in a protected activity; second, the activity was known to the defendant; third, she was subjected to an adverse employment action;

14

and fourth, the adverse action occurred because of the protected activity. *McClain v. NorthWest Cmty. Corr. Ctr.*, 440 F3d 320, 335 (6th Cir. 2004). Defendant does not argue Plaintiff engaged in a protected activity or Defendant were unaware of it. Defendant argues, rather, Plaintiff suffered slights and insults at work either because she imagined it or her bizarre behavior caused her ostracization (Court File No. 30 at 1, 7-8).

Defendant cannot argue Plaintiff imagined the conduct under these circumstances. To defeat Defendant's motion there must only be enough evidence a reasonable juror could believe her co-workers harassed her. Plaintiff may not be able to testify to her co-workers purpose in their behavior, but drawing all inferences, including credibility, in the favor of the Plaintiff, she has presented enough evidence for a reasonable juror to conclude harassment took place. Moreover, Plaintiff's retaliation claim cannot be dismissed merely because she has alleged no change in the terms and conditions of her employment. The Supreme Court has recently ruled the standard for "adverse action" for a retaliation claim is not limited to the terms and conditions of employment. *Burlington N. & Santa Fe Ry. Co. v. White*, – U.S. – , 126 S. Ct. 2405, 2412-13 (2006). Rather, Plaintiff must show "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 2415 (internal citations omitted). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id*. The question is whether a reasonable employee who was undergoing the harassment Plaintiff alleges would be dissuaded from making or supporting a charge of discrimination. Similar to the question of whether the workplace was adverse, this is a question the Court need not reach, for Plaintiff cannot prevail on her retaliation claim because she has no evidence the alleged harassment occurred because of her protected activity.

Temporal proximity alone is insufficient to establish a causal connection for a retaliation claim. *Little v. B.P. Exploration & Oil Co.*, 265 F.3d 357, 363-64 (6th Cir. 2001). But "temporal

15

proximity . . . with other evidence of retaliatory conduct [may be] sufficient to establish a causal connection. *Id*. at 264. Plaintiff alleges her co-workers "[began] to retaliate against me and started doing all the intimidation, and the ridiculing, noise making" (Court File No. 29, Ex. A at 100). Presuming this statement satisfies the temporal requirement, Plaintiff has still not proffered any specific facts supporting her claim. Plaintiff has provided no other justification for her belief she was being retaliated against because of her membership in a protected class aside from her statement the harassment was a "response to her complaints for failure to accommodate and complaints to the ethics hotline" (Court File No. 35 at ¶ 6). As the Sixth Circuit has held, this is not enough to create a genuine issue of material fact. *Little*, 265 F.3d at 363-64 ("temporal proximity alone is insufficient to establish a causal connection for a retaliation claim"). Because Plaintiff has shown no other basis for her belief that the actions are retaliatory, Plaintiff has not demonstrated enough evidence for a reasonable juror to find for Plaintiff on this issue.

Therefore Plaintiff's claim for relief because of retaliation will be **DISMISSED**.

## V. CONCLUSION

For the foregoing reasons Defendant's motion will be **GRANTED IN PART** and **DENIED IN PART**.

An order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**